UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| PEOPLELINK LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>STRATEGIC STAFFING SOLUTIONS<br>MANAGEMENT LLC, et al.,<br><br>    Defendants. | Case No. 1:25-CV-64-CCB-AZ |

## OPINION AND ORDER

Plaintiff Peoplelink, LLC ("Peoplelink") filed suit against Defendant Strategic Staffing Solutions, LLC ("S3") and Defendant Lear Corporation ("Lear"), asserting various contract claims. S3 has moved to compel arbitration between Peoplelink and S3, while Lear has moved for a judgment on the pleadings. Subsequently, Peoplelink has moved to compel arbitration against Lear.[1]

### BACKGROUND

Plaintiff Peoplelink, LLC ("Peoplelink") is an Indiana limited liability company headquartered in South Bend, Indiana that provides staffing, recruitment, and outsourcing services. (ECF 4 ¶¶ 1, 6). Defendant Strategic Staffing Solutions, LLC ("S3") is a Michigan limited liability company headquartered in Detroit, Michigan that provides staffing services as a "Managed Service Provider." (*Id.* ¶¶ 2, 7). On January 16,

---

[1] Peoplelink has not rescinded its contract claims against Lear or S3. Thus, the Court reads this motion as an alternative to its initial claims. Fed. R. Civ. P. 8(e).

2019, Peoplelink and S3 executed a written Supplier Services Agreement ("Agreement"). (*Id.* ¶ 9). Under the Agreement, Peoplelink would provide qualified staff to a third-party beneficiary, Defendant Lear Corporation ("Lear"). (*Id.* ¶ ¶11, 15). The Agreement required Peoplelink to submit all time and expense reports to S3, which would then submit them to Lear. (*Id.* ¶ ¶12–13). Under a separate agreement between Lear and S3, Lear was obligated to pay these expenses to S3. (*Id.* ¶ 12). Finally, the Agreement obligated S3 to pay the expenses that it received from Lear back to Peoplelink. (*Id.* ¶ 13).

On August 31, 2020, the contract ended. (*Id.* ¶ 16). On January 29, 2025, Peoplelink filed suit against both Lear and S3, alleging that it is owed $370,254.64 in unpaid work expenses and asserting claims of contractual breach, breach of good faith, and unjust enrichment. (ECF 4).

S3 has moved to stay the case and compel arbitration, citing the Agreement with Peoplelink. (ECF 10). S3 has also requested attorney's fees for the costs incurred in bringing its motion to force Peoplelink into contractually required arbitration. (*Id.*). Lear has moved for a judgment on the pleadings. (ECF 18). Following this, Peoplelink has made a motion to stay the case and compel arbitration against Lear. (ECF 23).

The Court now addresses each issue in turn.

ANALYSIS

**A. S3's Motion to Stay and Compel**

Defendant Strategic Staffing Solutions Management ("S3") has moved to stay this case and compel arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*

Under the FAA, arbitration should be compelled if there is "(1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746, 752 (N.D. Ill. 2012) (citing *Zurich Am. Ins. v. Watts. Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005)).

Here, Peoplelink signed a "Supplier Services Agreement" ("Agreement") with S3, which states that "[a]ll disputes arising under or in connection with this Agreement or any other document pertaining to this Agreement shall be finally settled by arbitration." (ECF 11 at 8). Peoplelink does not deny that this agreement is valid. (ECF 22 at 9). Thus, there is an enforceable written agreement to arbitrate. This dispute is within the scope of the Agreement's arbitration clause because Peoplelink's claim against S3 relates to money owed for its services under the Agreement. (ECF 4 at 4). And lastly, Peoplelink refuses to arbitrate at this time. (ECF 22 at 12). Thus, arbitration should be compelled under the FAA. *See Zurich Am. Ins. Co*, 417 F.3d at 687.

While Peoplelink objects to arbitration, none of its arguments explain why the FAA requirements do not apply, or why the arbitration requirement in the Agreement does not apply to this specific case. Peoplelink's concern is a pragmatic one: that by

3

being compelled to arbitrate with S3, it will need to litigate its dispute with Lear in a separate forum outside arbitration. (ECF 22 at 4). Peoplelink argues that "fragmenting the claims against S3 and Lear into separate forums as this would prevent any meaningful opportunity for Peoplelink to adjudicate its claims on the merits" and would be unfair because "each defendant could evade liability by pointing the finger at the other." (*Id.* at 9–10). This concern appears to have driven much of Peoplelink's litigation decision-making. For example, after initially being receptive to arbitration with S3, it pulled out after learning that Lear would not consent to joint arbitration. (ECF 11 at 13).

Whatever strategic litigation concerns Peoplelink may have, avoiding a valid arbitration agreement with S3 is not a proper mechanism to alleviate them. Peoplelink acknowledges that its refusal to submit to arbitration is contingent on a third party (Lear's) refusal. (ECF 22 at 8). But Peoplelink signed an unambiguous contract committing to arbitration with S3—the Agreement did not state that arbitration was contingent on a third party's consent or behavior.

Although it may be more convenient for Peoplelink to have simultaneous arbitration with both Lear and S3, Peoplelink provides no support for its claim that arbitration with S3 would "prevent any meaningful opportunity for Peoplelink to adjudicate its claims on the merits." (ECF 22 at 9). Either S3 is liable to Peoplelink, or it is not. If it is, then Peoplelink can receive a remedy in arbitration. If it is not, then Peoplelink's separate claims against Lear can be evaluated on their own terms. Due to a

4

valid and enforceable agreement under the FAA, Peoplelink must be compelled to arbitration with S3. *See Zurich Am. Ins. Co*, 417 F.3d at 687.

### B. Attorney's Fees

S3 has also requested attorney's fees from Peoplelink. (ECF 11 at 12). Federal Courts may award attorney's fees under Federal Rule of Civil Procedure 11(c) when a party presents an argument that is "frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." *Bishop v. Colvill*, 20-CV-1064-JD, 2023 WL 356503, at *5 (N.D Ind. Jan. 23, 2023) (citing *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998)).[2]

In compelling arbitration, attorney's fees "are generally awarded if the defaulting party acted without justification or if the party resisting arbitration did not have a 'reasonable chance to prevail.'" *Hires Parts Serv., Inc. v. NCR Corp.*, 859 F. Supp. 349, 355 (N.D. Ind. 1994) (quoting *Chauffeurs, Teamsters and Helpers, Loc. No. 765 v. Stroehmann Bros.*, 625 F.2d 1092, 1094 (3d Cir.1980)).

S3 requests attorney's fees as compensation for responding to Peoplelink's lawsuit outside arbitration. In response, Peoplelink cites its concern over being forced to litigate in different forums. (ECF 22 at 16). But that does not show Peoplelink's likelihood of prevailing. Given Peoplelink's acknowledgment of the Agreement's validity, it is hard to see how Peoplelink considered itself to have any valid legal

---

[2] S3 has not properly made a separate motion under Northern District of Indiana Local Rule 7-1. However, the Court may evaluate this issue sua sponte. *See* Fed.R.Civ.P. 11(c)(1); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

argument against arbitration with S3. Peoplelink's stated goal—to compel all three parties into simultaneous arbitration—may be understandable. But it may not file a groundless suit against S3 in order to achieve that goal, making S3 bear the cost of defense. *See Fries*, 146 F.3d at 458. The Court finds that an award of attorney's fees against Peoplelink on behalf of S3 is appropriate. *See Stroehmann Bros.*, 625 F.2d at 1094.

### C. Motion to Compel Arbitration against Lear

Peoplelink argues that Lear should be compelled to arbitrate with Peoplelink and S3 under the principle of equitable estoppel. (ECF 23). When applying estoppel doctrine, federal courts are directed to apply state law. *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 750 (7th Cir. 2017). In this case, Michigan law applies under the Agreement's choice of law terms. (ECF 1-2 at 17–18).

Under Michigan principles of equity, a non-signatory of an arbitration agreement may still be bound by the agreement when they seek a direct benefit from the contract while at the same time attempting to avoid other contractual obligations. *Wieland Corp., v. New Genetics, LLC*, No. 353484, 2021 WL 1499969, at *6 (Mich. Ct. App. Apr. 15, 2021). This equitable doctrine maintains fairness by enforcing consistency—if a party has "consistently maintained that [some] provisions of the same contract should be enforced to benefit the party," then they may not exclude others that are undesirable. *AFSCME Council 25 v. Wayne Cnty.*, 811 N.W.2d 4, 13 (Mich. Ct. App. 2011).

Peoplelink argues that Lear is bound by the arbitration clause because it "seeks a direct benefit" from the Peoplelink-S3 Agreement by requesting dismissal of Peoplelink's claims under that contract. But this argument runs into several problems.

6

First, Lear is not seeking to enforce its own claim against Peoplelink under the contract, but only moving to dismiss a claim. (ECF 18). It is difficult to construe this as "seeking a benefit" under a contract, and defendants do not cite any examples of courts doing so. *See Tobel v. AXA Equitable Live Ins.*, No. 298129, 2012 WL 555801 (Mich. Ct. App. Feb. 21, 2012), at *8 (describing "seeking a direct benefit" as "asserting claims "); *Wieland Corp.*, 2012 WL at *3 (same); *Pearson & Son Excavating Co. Inc. v. W. Recreational Vehicles, Inc.*, No. 3-CV-40246, 2005 WL 8156057, at *6 (E.D. Mich. Dec. 28, 2005). (describing equitable estoppel principle as preventing a party from "claim[ing] the benefits" of a contract while seeking to avoid its adverse enforcement).

But even if Lear's motion could be construed as seeking a benefit, the Agreement, read as a whole, clearly excludes any right of action against Lear. The provision that Lear allegedly "seeks a benefit under" clarifies as much: it states that Peoplelink has "no express or implied rights against [Lear] by virtue of this Agreement." (ECF 4 at 17). The Agreement specifically addresses Peoplelink's rights of action against Lear, and states that it has none, while affirmatively granting arbitration rights to Peoplelink *only* against a specific named party—S3. (*Id.* at 16–17). Thus, Lear is doing the opposite of trying to exclude some portions of the contract—instead, it is requesting that the contract be enforced in its entirety. *See AFSCME Council 25 v. Wayne Cnty.*, 811 N.W.2d at 13. There is no basis for equitable estoppel here. *Id.*

Lear is not arbitrarily cherry-picking its obligations, but seeking the enforcement of the whole contract. Equity cannot create a right of action when it is explicitly excluded by a contractual provision. *Furness Golf Constr. Inc. v. RVP Dev. Corp.*, No.

7

279398, 2009 WL 1653588, at *6 (Mich. Ct. App. June 11, 2009) (When there is an "express contractual . . . agreement" a party "cannot rely on equity to claim more than it is entitled to" under contract); *PFS-Premium Fin. Corp. v. Env't Risk Managers, Inc.*, No. 7256, 2010 WL 3418910, at *6 (Ct. App. Mich. Aug. 31, 2010) ("equity will not imply a contract in law where an express contract exists") (citing *Ramirez v. Bureau of State Lottery*, 463 N.W.2d 245, 285 (Ct. App. Mich. 1990)).

Peoplelink argues that "compelling Peoplelink and S3 to arbitrate in one forum while allowing Lear to remain in another would be manifestly unjust." (ECF 24 at 7). Yet it is hard to say that this is manifestly unjust when that scenario is explicitly addressed by the contract, which limits Peoplelink to arbitration against S3, while completely excluding Peoplelink's right to sue against Lear. (ECF 4 at 16–18). See *RVP Dev. Corp.*, 2009 WL 1653588, at *6; *Ramirez*, 463 N.W.2d at 285.

There is no equitable or legal basis for forcing Lear into the Agreement's arbitration provisions. Peoplelink's motion to compel arbitration is denied.

### D. Lear's Motion for Judgment on the Pleadings

Lear has moved for Judgment on the Pleadings under Rule of Civil Procedure 12(c), arguing that Peoplelink's claims against Lear are barred by the Agreement with S3. Lear argues that is entitled to enforce those terms as a third-party beneficiary. (ECF 18).

A motion for judgment on the pleadings is subject to the same standard as a motion for summary judgment, except that the district court may only consider the contents of the pleadings. See *Alexander v. City of Chicago,* 994 F.2d 333, 336 (7th

8

Cir.1993). Thus, judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

First, there is a threshold question as to whether Lear is a third-party beneficiary of the contract between Peoplelink and S3. If it is, then it would be eligible to enforce the Agreement's terms against Peoplelink. Michigan law states that a third party is a beneficiary of a contract when "the promisor . . . has undertaken to give or to do or refrain from doing something directly to or for said person." MCL 600.1405(1). A beneficiary "has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee." MCL 600.1405.

Under the Agreement, Peoplelink was obligated to provide services directly to Lear. (ECF 4 at 21). Moreover, the contract explicitly stated that Lear "shall be considered [a] third party beneficiar[y] of this Agreement for purposes of enforcing [Peoplelink's] obligations under this Agreement." (ECF 4 at 17). Since the contract made obligations on Peoplelink to directly benefit Lear, Lear is a third-party beneficiary. Thus, Lear may enforce the contract against Peoplelink as if it were a directly contracting party. *See* MCL 600.1405; *Shay v. Aldrich*, 790 N.W.2d 629, 640 (Mich. 2010).

Lear argues that Peoplelink expressly waived its rights against Lear in the Agreement. To waive a right, the contract's language must "show an intent to plainly

9

relinquish that right." *VHS Huron Valley Sinai Hospital v. Sentinel Ins. Co.,* 916 N.W.2d 218, 222 (Mich. Ct. App. 2018). Here, the Agreement states that Peoplelink had "no express or implied rights against [Lear] by virtue of this Agreement." (ECF 4 at 17). This is an explicit waiver of Peoplelink's contractual rights against Lear.

Lear is able to enforce this provision against Peoplelink as a third-party beneficiary. Lear's Motion for judgment on the pleadings is granted, and Peoplelink's claims against Lear are accordingly dismissed.

## Conclusion

For the foregoing reasons, the Court **GRANTS** S3's motion to stay this case and compel arbitration (ECF 10). The Court also **GRANTS** an award of attorney's fees for S3. S3 is **DIRECTED** to file a brief detailing the attorney's fees incurred in litigating its motion to compel arbitration by March 12, 2026. The Court **DENIES** Peoplelink's motion to compel arbitration against Lear (ECF 23) and **GRANTS** Lear's motion for judgment on the pleadings against Peoplelink (ECF 18).

SO ORDERED on March 3, 2026.

                                                    /s/*Cristal C. Brisco*
                                                    CRISTAL C. BRISCO, JUDGE
                                                    UNITED STATES DISTRICT COURT